IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, *et al.*,

*Plaintiffs*,

v.

CLAYTON B. OBERSHEIMER, INC., *et al.*,

*Defendants*.

Civil Action No. ELH-12-1000

**MEMORANDUM OPINION**

International Painters and Allied Trades Industry Pension Fund (the "Fund") and its administator, Gary J. Meyers, plaintiffs, filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. §§ 1001 *et seq.*, against defendants Clayton B. Obersheimer, Inc., doing business as CBO Glass ("CBO Glass"); Clayton B. Obersheimer of South Buffalo, LLC ("CBO South Buffalo") (collectively with CBO Glass, the "Companies"); and Gilbert DiMaio and Paul F. Hogan, Jr (collectively, "the Officers"). *See* Complaint ¶¶ 4, 7, 11-14 (ECF 1). According to the Complaint, the Officers are owners, officers, agents, or managing agents of CBO Glass. *See id.* ¶¶ 13-14. CBO Glass employs members of one or more local labor unions or district councils that are affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the "Union"). *See id.* ¶ 15. Moreover, the Complaint alleges that CBO Glass and CBO South Buffalo "are alter egos or a single employer." Complaint ¶ 12.

In particular, plaintiffs claim that defendants failed to meet their obligations under certain labor agreements to make contributions to a pension plan and annuity plan, established pursuant to ERISA, of which plaintiffs and their trustees are fiduciaries. According to plaintiffs, the Fund

itself and its pension plan and annuity plan (the "Plans") are all "employee benefit plans" within the meaning of ERISA. Plaintiffs seek to recover a sum of at least $472,813.83 currently due as contributions to the Plans; any additional amounts that become due and owing during the pendency of this litigation; liquidated damages; interest; and costs associated with this action, including attorney's fees. They contend that CBO South Buffalo is liable for CBO Glass's obligations to the Fund.

The Officers have filed a Motion to Dismiss ("Motion") (ECF 17) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They seek dismissal of the two counts of the Complaint that are leveled against them. Specifically, the Officers ask the Court to dismiss Count IV, which asserts breach of fiduciary duty, and Count V, which alleges the performance of a prohibited transaction by a fiduciary.[1] As the basis for their Motion, the Officers contend that they are not "fiduciaries" within the meaning of ERISA and thus are not subject to liability. Plaintiffs have filed an Opposition (ECF 18), and the officers have filed a Reply (ECF 19). No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons below, I will grant it.

**Factual Background**

According to the Complaint, CBO Glass is a party to or agreed to abide by the terms and conditions of certain collective bargaining agreements (the "Labor Contracts") with the Union. *See* Complaint ¶ 15. CBO Glass also signed or agreed to abide by the terms of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"). *See id.* ¶ 16. Under the Labor

[1] The Complaint contains five counts in total, but the first three counts are addressed only to the Companies, not the Officers. The first three counts are a claim for "Contributions Under ERISA" (Count I); a claim for "Contributions Under Contract" (Count II); and a claim for "Contributions Under Promissory Note" (Count III). Those counts are not at issue in connection with the Motion.

Contracts, Trust Agreement, and the plan documents of the Fund, CBO Glass agreed to make full and timely payment in certain amounts, on a monthly basis, to the Plans. *See id.* ¶ 17. According to plaintiffs, CBO Glass has failed to pay the amounts due under the Labor Contracts, Trust Agreement, and plan documents.

Mr. Hogan is the owner of CBO Glass and Mr. DiMaio is CBO Glass's former President/Chief Executive Officer. Plaintiffs allege that the Officers are "fiduciaries" under ERISA "with respect to the amount not paid by the Fund" because of the Officers' "possession, authority and control respecting the management or disposition of plan assets." Complaint ¶ 36. Among the exhibits attached to the Complaint, plaintiffs submitted an "Assignment" dated December 27, 2011, *see* ECF 1-4 at 7-8, by which CBO Glass assigned and conveyed to the Fund, in partial payment of delinquent contributions, the right of CBO Glass to a $350,000 debt owed to CBO Glass by Turner Construction Company. The Assignment was signed on behalf of CBO Glass by Mr. DiMaio, in his capacity as President and CEO. Mr. Hogan is not mentioned in any of the exhibits to the Complaint.

**Standard of Review**

As noted, the officers have moved to dismiss the case pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But, the Rule demands more than bald accusations or mere speculation. *Id.* But, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556. A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Id.* at 555.

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Davani v. Va. Dept. of Transp.*, 434 F.3d 712, 720 (4th Cir. 2006). Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . . ."); *see also Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F. 3d 298, 302 (4th Cir. 2008).

However, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 130 S.Ct. 1740

(2010). Moreover, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S.* Airways, 510 F.3d 442, 450 (4th Cir. 2007). In considering a Rule 12(b)(6) dismissal, however, the court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.

**Discussion**

The Officers argue that plaintiffs' claims fail because the Officers are not fiduciaries under ERISA. As the Officers see it, "plaintiffs, in a conclusory fashion, do nothing more than recite the language of the statue [sic]" and they "allege no facts that support their legal conclusion that the [officers] are fiduciaries," or that the Officers "have any authority or control to manage or dispose of plan assets." Motion at 5. The Officers insist that "the plaintiffs simply insert the phrase, 'the Individual Defendants' in front of a modest rewording of the statutory definition of 'fiduciary' and nothing more." *Id.* at 6.

Plaintiffs counter that the Officers' "conclusion is based upon their shallow understanding of what constitutes a fiduciary." Opposition at 3. In their view, "the language in

the governing plan documents leaves no doubt" that the Officers, "in their roles as President and Chief Financial Officer of the Company, exercise control and authority over [the] plan assets until such time that they are properly remitted to the Pension Fund and are therefore ERISA fiduciaries." *Id.* According to plaintiffs, the Officers breached their fiduciary duty when they "failed to remit the plan assets at the time they became payable to the Funds . . . ." *Id.*

Under ERISA, a fiduciary is defined in 29 U.S.C § 1002(21)(A), as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

A person or an entity can be expressly designated in an ERISA plan's governing documents as a fiduciary, but express designation as a fiduciary is not necessary if one's actions establish *de facto* fiduciary status. *See In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d 434, 445 (D. Md. 2005). None of the plan documents submitted by plaintiffs expressly designates the Officers as fiduciaries. Consequently, only *de facto* fiduciary status is at issue here.

Plantiffs do not allege that the Officers rendered investment advice for compensation, under subsection (ii) of the statutory definition of "fiduciary," or that the Officers had any discretionary authority over the administration or management of the Plans themselves, under subsection (iii) and the first clause of subsection (i) of the statutory definition. Accordingly, in order for the Officers to be considered *de facto* fiduciaries, the Officers must qualify under the second clause of subsection (i): they must exercise "authority or control respecting management or disposition of [the Plans'] assets." 29 U.S.C. § 1002(21)(A)(i). Plaintiffs' theory is that the

unpaid contributions due to the Plans constituted "assets" of the Plans under ERISA, and that the Officers exercised discretionary authority or control over those plan assets.

In the first instance, ERISA delegates elucidation of the meaning of the term "plan assets" to the Department of Labor (the "Department"). *See* 29 U.S.C. § 1002(42). With limitations not relevant here, ERISA defines "plan assets" to mean "plan assets as defined by such regulations as the Secretary [of Labor] may prescribe." *Id.* In turn, the Department has promulgated regulations articulating the situations in which certain types of assets qualify as assets of an ERISA plan. *See* 29 C.F.R. § 2510.3-101 (defining when plan investments are considered "plan assets"); *id.* § 2510.3-102 (defining when participant contributions are considered "plan assets"). However, the Department has not formally articulated a generalized definition of plan assets, nor has it "issued a formal rule governing when *employer* contributions become plan assets." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009) (emphasis in original); *accord ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 n.1 (3d Cir. 2003).

Instead, on several occasions, the Department has issued informal guidance regarding the general definition of plan assets and whether employer contributions qualify as plan assets. In *Halpin*, 566 F.3d at 289, the Second Circuit comprehensively distilled the Department's informal position:

> In the absence of a formal rule or regulation, the Department has informally advised that "the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law." U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993). Assets will "include any property, tangible or intangible, in which the plan has a beneficial ownership interest," considering "any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved." *Id.* Applying this reasoning, the Department has taken the position through various informal agency pronouncements that "employer contributions become an asset of the plan only when the contribution has been made." Employee Benefits Sec. Admin., U.S. Dep't of Labor, Field Assistance Bulletin 2008-1, at 1-2 (Feb. 1, 2008); *see also* U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993); U.S. Dep't of

> Labor, Advisory Op. No.2005-08A (May 11, 2005). "However, when an employer fails to make a required contribution to a plan in accordance with the plan documents, the plan has a claim against the employer for the contribution, and that claim is an asset of the plan." Employee Benefits Sec. Admin., U.S. Dep't of Labor, Field Assistance Bulletin 2008-1, at 2 (Feb. 1, 2008).

The *Halpin* Court found the Department's interpretation persuasive and worthy of deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Halpin*, 566 F.3d at 290 & n.2. The Second Circuit explained, *id.* at 290, 292 (internal footnote and some internal citations omitted):

> We agree with the Department's interpretation that employer contributions become assets only after being paid. Under "ordinary notions of property rights," if a debtor fails to meet its contractual obligations to a creditor, the creditor does not automatically own a share in the debtor's assets. The creditor, rather, has a "chose in action," an assignable contractual right to collect the funds owed by the debtor. As one treatise explains, "[t]he terms 'choses in actions' and 'debts' are used by courts to represent the same thing when viewed from opposite sides. The chose in action is the right of the creditor to be paid, while the debt is the obligation of the debtor to pay." Accordingly, the unpaid amounts are debts; they are not assets held in trust for the benefit of the creditor.
>
> Trust law similarly supports this analysis. *Cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989) (directing courts to consider trust law when "develop[ing] a federal common law of rights and obligations under ERISA-regulated plans." (internal quotation marks omitted)). Under well-settled principles of trust law, a debtor-creditor relationship is not a fiduciary relationship. Indeed, the Restatement [(Third)] of Trusts explains that, with regard to amounts deducted by an employer for eventual contribution on behalf of an employee, "[a] trust arises as to the amounts deducted as soon as they are either set aside by the employer for the employees' purposes or paid over to another person for those purposes. Until then, the employer's obligation is merely a debt, with the 'obligee' . . . holding a chose in action . . . in trust."
>
> * * *
>
> [I]f unpaid employer contributions were plan assets, the employer would automatically become an ERISA fiduciary once it failed to make the payments. As such, the employer would owe the plan undivided loyalty at the expense of competing obligations—some fiduciary—to the business, and to others such as employees, customers, shareholders and lenders, and an undifferentiated portion of the compan[y's] assets would be held in trust for the plan. It is difficult to envision how proprietors could ever operate a business enterprise under such circumstances. It is highly unlikely—indeed inconceivable—that Congress intended such a result.

Notably, in *United States v. Jackson*, 524 F.3d 532 (4th Cir. 2008), *vac'd*, 555 U.S. 1163 (2009), the Fourth Circuit adopted the contrary position, affirming a district court's ruling that "unpaid employer contributions become 'credits' and are ERISA 'plan assets' when they are 'due and payable to the plan.'" 524 F.3d at 543 (quoting district court). After the defendants in *Jackson* petitioned for certiorari, however, the United States changed its position and urged the Supreme Court to summarily vacate the Fourth Circuit's decision and remand for reconsideration on the basis of the Department's interpretation, summarized above. *See* Brief for the United States on Petition for Writ of Certiorari at 25, *Jackson*, 555 U.S. 1163 (No. 08-263). The Supreme Court did so, *see* 555 U.S. at 1163, and on remand, the Fourth Circuit vacated and remanded to the district court without expressing any further view on the substantive issue. *See United States v. Jackson*, 336 F. App'x 282, 282-84 (4th Cir. 2009).

Despite the Department's interpretation, there is support in federal appellate case law for the proposition that unpaid employer contributions may be considered assets of an ERISA plan if "the agreement between the fund and the employer specifically and clearly [so] declares." *ITPE Pension Fund*, *supra*, 334 F.3d at 1013; *see also Halpin*, 566 F.3d at 290 (stating that the corporation and the plan's "trustees were free to contractually provide for some other result"). The Fourth Circuit has not addressed this issue.

In this case, the Trust Agreement governing the Plans contains a declaration stating expressly that unpaid employer contributions are assets of the Plans. The Trust Agreement defines "Employer Contributions," in part, as follows:

> The term 'Employer Contributions' shall mean payments made or that are required to be made to the Fund, *including amounts owed but not yet paid*, by a Contributing Employer under the provisions of, or in accordance with, a [Labor Contract] and the Trust Agreement, or [under certain circumstances] pursuant to and in accordance with the Rules and Regulations of the Pension Plan and the

> Annuity Plan. *All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue*, whether or not such Employer Contributions are collected or received by the Fund. . . .

Trust Agreement, Art.1 § 10, Ex.2 to Complaint (ECF 1-2) (emphasis added).

I assume, *arguendo*, that, pursuant to the foregoing provision of the Trust Agreement, the unpaid contributions at issue were "plan assets" while still unpaid. That is not sufficient to resolve the Motion, however. Even if the unpaid contributions were plan assets, the Officers would be considered *de facto* fiduciaries only if they exercised discretionary authority or control over disposition of the unpaid contributions, in a fiduciary capacity. The question is whether plaintiffs have adequately alleged that the Officers did so.

In general, an ERISA fiduciary is defined "not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). *Cf. Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 233 (3d Cir. 1994) (determining that discretion is the "linchpin of fiduciary status under ERISA"). This is because someone who is a fiduciary "under ERISA may wear different hats." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Under ERISA, "a fiduciary may have financial interests adverse to beneficiaries. Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers . . . ." *Id.* What ERISA requires is that "the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Id.* Accordingly, to assess a breach of fiduciary duty under ERISA, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person

was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* at 226.

Thus, as Judge Catherine C. Blake observed in *In re Mutual Funds Investment Litigation*, *supra*, 403 F. Supp. 2d 434, corporate officers "do not become fiduciaries solely by virtue of their corporate position, even if the corporation is a fiduciary, 'unless it can be shown that they have individual discretionary roles as to plan administration.'" *Id.* at 447 (quoting *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991)). Nor does a corporate officer qualify as a fiduciary if he or she performs only "ministerial duties on behalf of the plan." *In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d at 448 (citing *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998)). For instance, an officer's signing of documents that bind a company, without more, does not confer fiduciary status upon the signing officer. *In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d at 448 ("'[T]hose who prepare and sign SEC filings do not become ERISA fiduciaries through those actions.'") (quoting *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1226 (D. Kan. 2004)).

When pleading an ERISA fiduciary breach, Fourth Circuit case law requires a plaintiff to "do more than quote the statutory language regarding 'discretionary control' to plead adequately that a given defendant is a *de facto* ERISA fiduciary." *Id.* at 446; *see also Custer v. Sweeny*, 89 F.3d 1156, 1163 (4th Cir. 1996) (determing that plaintiff had not adequately pled the *de facto* fiduciary status of the defendant, who was legal counsel to an ERISA plan, because, although the complaint was "replete with assertions of [the defendant]'s 'discretionary authority [and] control . . . over . . . certain assets of the Fund,' it nevertheless lack[ed] any specific allegations capable of demonstrating that [the defendant] transcended his role as legal counsel") (citation omitted). In other words, bald allegations that an officer had discretionary authority or control over the

plan assets are insufficient, "without a proffer of some factual basis for concluding that a given entity possessed such discretionary authority." *In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d at 447.

*In re Luna*, 406 F.3d 1192, 1198 (10th Cir. 2005), is analogous to this case. In *Luna*, as in this case, the defendants were owners and corporate officers of an employer that had failed to pay monthly contributions to various employee benefit funds pursuant to a collective bargaining agreement. *Id.* at 1197. The Tenth Circuit determined that the defendants "did not exercise authority or control respecting the management or disposition of a plan asset." *Id.* at 1198. The *Luna* Court acknowledged that there was language in the applicable trust agreements that could be construed to define the unpaid contributions themselves, rather than the contractual right to receive the contributions, as plan assets (although the *Luna* Court characterized the language as "at best ambiguous"). *Id.* at 1200-01. Nonetheless, the *Luna* Court said that, "[e]ven if . . . the asset[s] were the unpaid contributions themselves," the "'management or disposition' language" found in ERISA's definition of a fiduciary "'refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on,'" and the defendants did not exercise such authority or control. *Id.* at 1204 (citation omitted). Ultimately, the court concluded that "the mere discretion whether to pay debts owed to an employee benefit plan . . . does not suffice to confer fiduciary status under ERISA." *Id.* at 1206.

In sum, the Tenth Circuit rejected the plan's argument that, when an employer assumes "a contractual duty to make contributions, its discretion to exercise prudence in upholding this duty—i.e., to pay or not to pay—is enough to make it an ERISA fiduciary." *Id.* at 1203. As the *Luna* Court saw it, an employer does not "automatically become[ ] a fiduciary of an ERISA plan as soon as it breaches its agreement to make employer contributions." *Id.*

Two years later, the Tenth Circuit reiterated its *de facto* fiduciary analysis from *Luna* in *Holdeman v. Devine,* 474 F.3d 770 (10th Cir. 2007). In *Holdeman*, the court determined that the CEO of an employer "was acting in his capacity as CEO of [the company], and not in his capacity as a plan fiduciary" when the officer "was deciding whether to allocate [company] funds to the Plan or elsewhere." *Id.* at 780. The court reasoned that the officer did "not have any authority, in his role as plan fiduciary, to make decisions regarding the [company]'s allocation of its assets and revenue. Rather, only in his role as CEO did [the officer] have authority to make such decisions." *Id.* Applying "the principles outlined in *Pegram*," the court held that the CEO "was 'wearing his CEO hat' in making those allocation-of-funding decisions, and in turn did not breach any fiduciary duties to the Plan in doing so." *Id.*

Similarly, in *Finkel v. Romanowicz,* 577 F.3d 79 (2d Cir. 2009), the Second Circuit upheld the dismissal of claims against the individual principal of an employer for breach of fiduciary duty under ERISA. The basis for the claims was the employer's failure to remit withheld *employee* contributions, rather than *employer* contributions to the plan. Under the governing Department of Labor regulations, the unpaid employee contributions were clearly "plan assets" within the meaning of ERISA. *See id.* at 85 & n.8 (citing 29 C.F.R. § 2510.3-102). The plan had alleged in its complaint that the principal, "'*by virtue of his position as an officer of* [*the employer*], exercised control'" over plan assets, including "'general assets with which withheld contributions were commingled.'" *Id.* at 85 (quoting complaint) (emphasis and some alterations in original). Nevertheless, the district court dismissed the claims against the individual defendant, and the Second Circuit affirmed. The Second Circuit determined that the district court "was not free to conclude that [the principal's] status as an officer of [the employer]

made him a fiduciary of the . . . Plan." *Id.* at 86. The court said, *id.* at 86-87 (internal citations omitted):

> Accepting all of the [plan's] allegations in this case as true and drawing all inferences in its favor, we conclude that [the principal] was simply an officer of [the employer], that he signed checks on the company's behalf, and that he and [the employer] "maintained" plan assets "for the benefit of [himself and the company]." The Joint Board has not alleged that [the principal] "select[ed] investments" or "exchang[ed] one instrument for another." Nor has it alleged that he was "[responsible] for determining which of the company's creditors would be paid or in what order," or otherwise enjoyed authority or control over the management of . . . Plan assets. In short, the [plan] has not alleged that [the principal] engaged in, or had the authority to engage in, any activities that would make him a fiduciary under § 1002(21)(A)(i)'s definition of that term.

In their Opposition, plaintiffs cite an unreported case from the Eastern District of Pennsylvania, *PMTA-ILA Containerization Fund v. Rose*, No. 94-5635, 1995 WL 461269 (E.D. Pa. Aug. 2, 1995), to support their claim that the Officers are liable as fiduciaries. In that case, the defendant, who was President and CEO of the company, admitted that "he exercised discretionary control over all of [the company]'s assets, including the container royalties that he collected for the Fund." *Id.*, 1995 WL 461269 at *5. The court granted the plaintiffs' motion for summary judgement, and held that the defendant was a *de facto* fiduciary because he had the requisite discretionary control over the plan assets. *Id.* According to the *Rose* Court, the defendant exercised this discretion when he "made the final decision on how to distribute [the company]'s revenues and royalties. It was [the defendant's] decision to either pay the accrued contributions to the Fund, or use the container royalties to meet other obligations." *Id.*

Although *Rose* supports plaintiffs' position, I am persuaded by the more recent reported appellate case law, discussed above. In my view, plaintiffs have failed to allege sufficient facts to suggest plausibly that the Officers acted as fiduciaries under ERISA.

In Paragraph 36 of the Complaint, for example, plaintiffs allege that the officers are fiduciaries as to the unpaid contributions "by reason of [the Officers'] possession, authority and control respecting the management or disposition of plan assets with respect to assets of the Pension Plan and Annuity Plan." Complaint ¶ 36. The plaintiffs do not explain how the officers had authority or control regarding the plan assets. Instead, this averment simply recites ERISA's statutory language without specifically demonstrating how the officers exercised discretionary authority or control over the plan assets. The assertion is merely a "formulaic recitation of the [statutory] elements" of fiduciary status under 28 U.S.C. § 1002(21)(A). *Twombly*, *supra*, 550 U.S. at 555. Such a statutory recitation falls short of the Fourth Circuit's standard, however, which "requires more than the mere recitation of statutory language in an ERISA fiduciary breach case." *In re Mut. Funds Inv. Litig.*, *supra*, 403 F. Supp. 2d at 446.

To be sure, the plaintiffs also attached to the Complaint the Assignment that was signed by Mr. DiMaio. This document assigned and conveyed to the Fund a debt obligation in the amount of $350,000 owed to CBO Glass by a third party. Although the Complaint does not make any express reference this document, plaintiffs assert in their Opposition that Mr. DiMaio's signature on the document demonstrates that the Officers "had signature authority to bind [CBO Glass] to agreements and made decisions regarding the order in which [CBO Glass] issued payment to its creditors." Opposition at 10. However, the Assignment establishes nothing at all with respect to Mr. Hogan, who did not sign it and is not mentioned in it. And, even as to Mr. DiMaio, the mere fact that he "signed checks on the company's behalf," or had the authority to authorize payments on behalf of CBO Glass, is insufficient to establish fiduciary status. *Finkel*, 577 F.3d at 86.

In sum, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, *supra*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rather than alleging specific facts to support their claim of fiduciary status, plaintiffs' allegations are merely conclusory. The Complaint and its attached exhibits establish only that DiMaio or Hogan are officers or owners of CBO Glass, but a district court is "not free to conclude that [an individual's] status as an officer of [a company] ma[kes] him a fiduciary of [an ERISA] Plan." *Finkel*, 577 F.3d at 86.

Based on the foregoing, I will grant the Officers' Motion and will dismiss, without prejudice, Counts IV and V of the Complaint.[2] An appropriate Order follows.

Date: February 13, 2013

/s/
Ellen Lipton Hollander
United States District Judge

[2] In the event that plaintiffs possess or acquire sufficient information to file an amended complaint restating Count IV or V against the Officers with sufficient particularity, plaintiffs will be free to move for leave to file an amended complaint in accordance with Fed. R. Civ. P. 15(a)(2), Local Rule 103.6, and any subsequent scheduling order issued by the Court.